COPY

BRODSKY MICKLOW BULL & WEISS, LLP
Philip E. Weiss, Esq. (No. 152523)
2608 Shelter Island Drive, Suite 202
San Diego, California 92106
Telephone: (619) 225-8884
Facsimile: (619) 225-8801

Attorneys for Plaintiff

Waterfront Newport Beach, LLC

FILED 2010 OCT -4 AM 11: 12

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WATERFRONT NEWPORT BEACH, LLC., a California Limited Liability Corporation,<br><br>Plaintiff,<br><br>v.<br><br>P/V ENDEAVOR, U.S.C.G. Official No. 582496, a vessel approximately 109.6-feet in length and 28.3-feet in breadth, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENANCES, *in rem*, and AMERICAN YACHT CHARTERS, INC., a California corporation, *in personam*,<br><br>Defendant. | Case No. **SACV10-01492 JVS (RNBx)**<br><br>IN ADMIRALTY<br><br>VERIFIED COMPLAINT OF PLAINTIFF FOR VESSEL ARREST, INTERLOCUTORY SALE AND FOR MONEY DAMAGES FOR BREACH OF MARITIME CONTRACT, *QUANTUM MERUIT* AND TRESPASS<br><br>F.R.C.P. Supplemental Admiralty Rules C and E.<br><br>46 U.S.C. Sections 30101-31343 |

Plaintiff alleges:

**JURISDICTION**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333(1), 28 U.S.C. § 1333 and the Commercial Instruments and Maritime Lien Act, embodied at 46 U.S.C. sections 31301, *et seq*. This action is a maritime and admiralty claim within the provisions of Rule 9(h) of the Federal Rules of Civil Procedure, and within the Supplemental Rules for Certain Admiralty and Maritime Claims and of this Honorable Court. Plaintiff WATERFRONT NEWPORT BEACH, LLC (hereinafter "PLAINTIFF") brings this action on its own behalf and

on behalf of all parties who were, are or may become interested in all or part of the property which is the subject of this litigation, as their interests may appear.

**PARTIES**

2. PLAINTIFF is and was at all times material herein a California Limited Liability Corporation in good standing and existing by virtue of the law of the State of California. PLAINTIFF operates a commercial wharf located at 2901 West Coast Highway, Newport Beach, California. Pursuant to a written Commercial Lease which was executed by Defendant AMERICAN YACHT CHARTERS, INC., beginning on or about December 1, 2008 PLAINTIFF provided wharfage and other services for the benefit of the Defendant Vessel P/V ENDEAVOR, U.S.C.G. Official No. 582496 (the "DEFENDANT VESSEL"), which services constitute "necessaries" for purposes of the Commercial Instruments and Maritime Lien Act (46 U.S.C. 31301, *et seq.*). A true and correct copy of the Commercial Lease is attached hereto as Exhibit A.

3. United States Coast Guard records reflect that the DEFENDANT VESSEL is a documented (under No. 582496) 109.6-foot steel inspected passenger vessel, with a breadth of 28.3 feet, a depth of 9.8 feet, and of 62 net registered tons.

4. Defendant AMERICAN YACHT CHARTERS, INC. ("AYC") is a California corporation, which on information and belief is doing business in Newport Beach, California.

**FIRST COUNT**

**(Breach of Maritime Contract for Necessaries)**

4. PLAINTIFF refers to Paragraphs 1 through 4, inclusive, of this Verified Complaint and incorporates them as though fully set forth here.

5. On or about November 17, 2008 DEFENDANT AYC, by and through Mr. Stuart Sitko, for itself and on behalf of and for the benefit of the DEFENDANT VESSEL, entered into a written Commercial Lease (Exh. A hereto), pursuant to which PLAINTIFF provided wharfage and other maritime services for the benefit of the DEFENDANT VESSEL, which services constitute "necessaries" for purposes of the Commercial Instruments and Federal Maritime Lien Act (46 U.S.C. section 31301, *et seq.*).

6. Pursuant to a separate written Standard Multi-Tenant Office Lease - Gross, PLAINTIFF provided office space to and for the benefit of DEFENDANT AYC.

7. PLAINTIFF is informed and believes that, at least in part as a consequence of the local and national economic downturn over the past several months, and a resulting reduction in the number of charter bookings for the DEFENDANT VESSEL, DEFENDANT AYC became financially unable to maintain current in payments contractually due to the PLAINTIFF under the above referenced written contracts.

8. As a consequence of their failure to tender monies due pursuant to the terms of the written Commercial Lease and the written Standard Multi-Tenant Office Lease - Gross, and in view of DEFENDANT AYC's continuing occupation of both the office space and wharf space without tendering payment, PLAINTIFF engaged counsel who on or about August 22, 2010 filed an unlawful detainer action in the Superior Court, County of Orange, in the case styled: Waterfront Newport Beach, LLC v. American Yacht Charters, Inc., Case No. 30-2010-00392236 (the "Unlawful Detainer Action").

9. On or about September 8, 2010 the Superior Court entered Judgment by Default in Plaintiff's favor in the Unlawful Detainer Action, in which the Court verified that "Plaintiff is entitled to possession of the premises located at 2901 West Coast Hwy, Dock Slips G&H, Newport Beach, CA 92663). This Judgment, limited to awarding possession only, does not include an award of money damages for unpaid wharfage fees or other fees.

10. On or about September 10, 2010 a Writ of Execution issued in the Unlawful Detainer Action, directing the Sheriff or Marshal of the County of Orange to execute on a Writ of Possession.

11. Although DEFENDANT AYC has removed substantially all of its possessions from the office that it leased from PLAINTIFF, notwithstanding entry of judgment in PLAINTIFF's favor in the Unlawful Detainer Action and the issuance of a Writ of Execution in that Action, the DEFENDANT VESSEL still has not been removed from PLAINTIFF's wharf, where she continues to occupy space without contractual or any other authority, and without payment of any kind to PLAINTIFF.

12. PLAINTIFF attempted to resolve this matter informally, without seeking the assistance of this Honorable Court, and to such end engaged in discussions with DEFENDANT AYC, which ultimately proved entirely unfruitful and failed to result in a resolution.

13. Wharfage fees are continuing to accrue at the rate of not less than $12,239.30 per month, and the account for the DEFENDANT VESSEL currently (as of September 22, 2010) stands in arrears in an amount of not less than $99,416.72.

14. PLAINTIFF has fully satisfied all obligations required of it as a maritime services provider and under the above referenced Commercial Lease.

15. Despite PLAINTIFF'S repeated demands to pay monies due and owing for maritime goods and services provided for the benefit of the DEFENDANT VESSEL, the DEFENDANT VESSEL and her ostensible and apparent owner have failed and refused, and they continue to fail and refuse, to pay sums necessary to satisfy PLAINTIFF's maritime lien in the above amount, which now encumbers the DEFENDANT VESSEL.

16. As a consequence of the foregoing, PLAINTIFF has been damaged, through the date of this Verified Complaint, in a sum of not less than $99,416.72 (through September 22, 2010), plus additional wharfage fees accruing through the date of arrest of the DEFENDANT VESSEL, plus prejudgment interest, plus costs of suit (including attorneys' fees), no part of which has been paid by the DEFENDANT VESSEL, DEFENDANT AYC or any other person or entity

**SECOND COUNT**

**(*Quantum Meruit*)**

17. PLAINTIFF refers to Paragraphs 1 through 4, and 6 through 16 inclusive, of this Complaint and incorporates them as though fully set forth herein.

18. PLAINTIFF provided valuable wharfage services and other useful maritime necessaries to the DEFENDANT VESSEL, for her benefit.

19. These wharfage services and other maritime necessaries were accepted by the DEFENDANT VESSEL and DEFENDANT AYC, and enjoyed by them.

20. PLAINTIFF had and has a rightful expectation of payment for these maritime services, but not been paid for them.

21. Under the circumstances presented, not requiring payment for these services would result in the unjust enrichment of Defendants.

22. By reason of the foregoing, PLAINTIFF has been damaged in a sum of not less than $99,416.72 (through September 22, 2010), plus additional wharfage fees accruing through the date of arrest of the DEFENDANT VESSEL, plus prejudgment interest, plus costs of suit (including attorneys' fees).

**THIRD COUNT**

**(Trespass – Against Defendant Vessel)**

23. PLAINTIFF refers to Paragraphs 1 through 4, 6 through 16, and 18 through 22 inclusive, of this Verified Complaint and incorporates them as though fully set forth herein.

24. Following the default of Defendant AYC in its payment obligations under both the Commercial Lease for wharf space and the Standard Multi-Tenant Office Lease - Gross, PLAINTIFF brought and prevailed in an unlawful detainer action in the Superior Court, styled: Waterfront Newport Beach, LLC v. American Yacht Charters, Inc., Case No. 30-2010-00392236, with Default Judgment being entered in said action on or about September 8, 2010.

25. On September 8, 2010, when the Default Judgment was entered in the above referenced action, or before said date, the DEFENDANT VESSEL no longer had contractual, statutory or any other authority justifying its continued occupancy of wharf space at PLAINTIFF's premises, which it did and continues to do.

26. As a result of the DEFENDANT VESSEL's past and continuing occupancy of wharf space without contractual, statutory or other authority the DEFENDANT VESSEL is unlawfully interfering with PLAINTIFF's possession of its real property.

27. The DEFENDANT VESSEL has and continues to occupy wharf space at PLAINTIFF's premises, without its permission and without legal authority or justification.

///

28. By reason of the foregoing, Plaintiff has been damaged in a sum of not less than $99,416.72 (through September 22, 2010), plus additional wharfage fees accruing through the date of arrest of the DEFENDANT VESSEL, plus prejudgment interest, plus costs of suit (including attorneys' fees).

**WHEREFORE**, PLAINTIFF prays:

1. That process in due form of law pursuant to this Court's Admiralty and Maritime Jurisdiction issue *in rem* against the DEFENDANT VESSEL, her rigging, tackle, apparel, furniture, engines, bunkers, and all other necessaries thereunto appertaining and belonging, and that all persons claiming any interest in the DEFENDANT VESSEL be cited to appear and answer this Verified *in rem* Complaint;

2. That PLAINTIFF's maritime lien be declared to be valid and subsisting in an amount not less than in a sum of not less than $99,416.72, plus additional wharfage fees accruing through the date of arrest of the DEFENDANT VESSEL, plus accrued interest and recoverable costs of suit;

3. That judgment enter against the DEFENDANT VESSEL, *in rem*, for PLAINTIFF's damages in a sum not less than $99,416.72 plus additional wharfage fees accruing through the date of arrest of the DEFENDANT VESSEL, together with interest thereon, and costs of suit herein, including attorneys' fees, and together with all other amounts which have been or are required to be disbursed by PLAINTIFF for the care, insuring, preservation, storage and mooring of DEFENDANT VESSEL, and all other advances, expenses, fees, costs and disbursements by PLAINTIFF, together with post-judgment interest at the maximum statutory rate.

4. That DEFENDANT VESSEL, her rigging tackle, apparel, furniture, and all other necessaries thereunto appertaining and belonging be condemned and sold to pay the demands and claims of PLAINTIFF, with interest and costs, and that PLAINTIFF may become a purchaser permitted to credit bid at any sale of the DEFENDANT VESSEL any amounts adjudged to be owing to PLAINTIFF;

///

5. That, in the event a bond or other acceptable security is posted with the Registry of the Court to effect the release of the DEFENDANT VESSEL as permitted by the Supplemental Admiralty Rules (F.R.C.P.), an Order issue requiring her immediately upon release by the U.S. Marshal to be removed from PLAINTIFF's premises;

6. That it be decreed that any and all persons, firms or corporations claiming any interest in the DEFENDANT VESSEL are forever barred and foreclosed of and from all right or equity of redemption or claim of, in, or to the DEFENDANT VESSEL and every part thereof; and

7. That PLAINTIFF have such other and further relief in justice it may be entitled to receive.

Dated: October 1, 2010

Respectfully submitted,

BRODSKY, MICKLOW, BULL & WEISS

By______________________________
Philip E. Weiss, Attorney for Plaintiff
Waterfront Newport Beach, LLC
E-mail: shiplaw@earthlink.net

**VERIFICATION**

I, Robert Lounsbury, declare under penalty of perjury under the laws of the United States and the State of California as follows:

1. I, the undersigned, am a Member of WATERFRONT NEWPORT BEACH, LLC, the Plaintiff in this action. I certify I have read the foregoing Verified Complaint, and know its contents.

2. The matters stated in the Verified Complaint are true of my own knowledge and belief except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

Executed this 1st day of October, 2010 at Newport Beach, California.

Robert Lounsbury

# Table of Contents / Exhibits


| Exhibit | Description | Number of Pages |
|---|---|---|
| A | Commercial Lease | 13 |

# EXHIBIT A

***COMMERCIAL LEASE***

THIS LEASE is made on the 17th Day of November, 2008.

The Landlord hereby agrees to lease to the Tenant(s), and the Tenant(s) hereby agrees to hire and take from the Landlord, the Leased Premises described below pursuant to the terms and conditions specified herein:

LANDLORD: WATERFRONT NEWPORT BEACH, LLC

Address: 2901 West Coast Hwy, #200 Newport Beach, CA 92663

TENANT(S): AMERICAN YACHT CHARTERS, INC. / STUART SITKO

Address: 2901 West Coast Hwy, #190 Newport Beach, CA. 92663

Vessel: "ENDEAVOR"

1. Leased Premises.

The Leased Premises are those premises described as: real property known as "Dock Slips G & H" located adjacent to an office building (the "Building") whose address is 2901 West Coast Highway, Newport Beach, California. A true and correct depiction of the Leased Premises is attached as Exhibit "A". The entirety of the depiction, absent the seawall and adjacent Building, is sometimes referred to herein as the "Marina".

2. Term.

The term of the Lease shall be for a period of Ten (10) years commencing of the First (1st) day of December, 2008 ("Commencement Date") and ending on the Thirtieth (30th) day of November, 2018 ("Expiration Date"), unless sooner terminated as hereinafter provided. If Tenant(s) remains in possession of the Leased Premises with the written consent of the Landlord after the Lease expiration date stated above, this Lease will be converted to a month-to-month Lease and each party shall have the right to terminate the Lease by giving at least one (1) month's prior written notice to the other party.

3. Rent.

The Tenant(s) agrees to pay to the Landlord throughout the term of this Lease, a BASE RENT, for the Leased Premises in the sum of **Eleven Thousand Six Hundred Fifty Six Dollars and Forty Eight Cents ($11,656.48)** inclusive, plus rent adjustments in accordance with Paragraph No. 4 as set forth and contained herein below, on the first (1st) day of each and every calendar month during the full term of this Lease. Rent shall be paid to the Landlord, without deduction or offset, in lawful money of the United States of America. If the aforementioned rent is not paid by the fifth (5th) day of each calendar month, Landlord shall have the option, at its sole discretion, to either terminate this Lease or charge Tenant(s), a late fee in the amount of Eleven Hundred Sixty Five Dollars and Sixty Five Cents ($1,165.65) or 10% of Base Rent, whichever is greater.

SS



EXHIBIT A

4. Rent Adjustment.

Tenant(s) agrees to pay to the Landlord a rental increase of Five Percent (5%) as additional rent commencing on each successive January 1st following the date of December 1, 2009, and annually thereafter throughout the term of this Lease. This rental increase shall continue, at the increased rent of Five Percent (5%) on the then existing monthly rental rate, on an annual basis thereafter, always commencing on January 1st of each consecutive year throughout the term of this Lease. i.e. continuing thereafter until the end of this Lease and any renewals thereafter.

5. Commercial Pier Use Fee.

On January 1, 2009 and each successive January 1st annually thereafter, Tenant(s) shall pay to the Landlord, the sum of **Five Hundred Dollars ($500.00)** for the Commercial Pier Use Fee for the Leased Premises which fee is assessed against by the City of Newport Beach.

6. Security Deposit:

Upon execution of this Lease, the sum of **Eleven Thousand Six Hundred Fifty Six Dollars and Forty Eight Cents ($11,656.48.00)** shall be deposited by the Tenant(s) with the Landlord as follows:

(a) Existing Tenant(s) security deposit of $3,000.00 currently on file with, and held by Landlord to be applied by Landlord towards Tenant(s)'s Security Deposit due hereunder and;

(b) Four (4) separate equal monthly payments of $2,164.12 per month (e.g. $2,164.12 x 4 = $8,656.48) due and payable on December 1, 2008, January 1, 2009, February 1, 2009 and March 1, 2009. Deposit of separate equal monthly payments towards Security Deposit described herein above shall be included in Tenant(s)'s monthly rent bill and paid to Landlord by Tenant on a monthly basis along with Tenant(s)'s monthly Base Rent.

The total amount of the Security Deposit is therefore, **$11,656.48** is to be held by Landlord as security for the faithful performance of all the covenants and conditions of the Lease by the Tenant(s). If the Tenant(s) faithfully performs all covenants and conditions on its part to be performed, then the sum deposited shall be returned to the Tenant(s).

7. Tenant Improvement Allowance.

None

8. Contingency.

This Lease is contingent upon Landlord and Tenant(s)'s mutual agreement and execution of an extension ("Lease Addendum No. 2") of Tenant(s)'s existing Standard Office Lease with Landlord dated February 1, 2007 for reference purposes only.

SS





EXHIBIT A

9. Delivery of Possession.

If for any reason the Landlord cannot deliver possession of the Leased Premises to the Tenant(s) when the Lease term commences, this Lease shall not be void or voidable, nor shall the Landlord be liable to the Tenant(s) for any loss or damage resulting therefrom. However, there shall be an abatement of rent for the period between the commencement of the Lease term and the time when the Landlord delivers possession.

10. Use of Leased Premises.

The Leased Premises shall be used for Marina purposes and no other. No part of the Leased Premises shall be used for any different purpose. Tenant(s) shall not do, nor permit anything to be done in, on or about the Premises, nor bring or keep, or permit to be bought or kept therein, anything which is prohibited by, or will in any way conflict with any law, statute, ordinance, or governmental rule of regulation now in force or which may hereafter be enacted. Tenant(s) shall not do, nor permit any act to be done, which will increase the existing rate or cause cancellation of insurance on the Leased Premises or will cause a substantial increase in utility services normally supplied to the Leased Premises. Tenant(s) shall not do, nor permit anything to be done in, on or about the Leased Premises which will in any way obstruct or interfere with the rights of other Tenant(s) of the Marina, or the adjoined Building, or injure or annoy them, or use or allow the Leased Premises to be used for any improper, immoral, unlawful or objectionable purpose, nor shall Tenant(s) or licensees, employees or invitees or tenant(s) causes, maintain or permit any nuisance in on or about the Leased Premises or commit or suffer to be committed any waste in, on or about the Premises. Tenant(s) shall not bring into, onto or about the Leased Premises any furniture, equipment, materials or other objects, which may overload the Leased Premises or any portion thereof. Tenant(s) shall comply with all statues, ordinances, regulations, and other requirements of all governmental entities, which pertain to the occupancy or use of the Leased Premises, and with all "Rules and Regulations" which are adopted by Landlord and the preservation of good order on the Leased Premises. These "Rules and Regulations", although not all inclusive, are attached as Exhibit "B" to this Commercial Lease, and constitute additional requirements on the use of the Leased Premises and expressly made a part of this Lease.

11. Rules and Regulations.

(a) Landlord may enter the Leased Premises at any reasonable time without notice to (i) inspect the Leased Premises, (ii) exhibit the Leased Premises to prospective purchasers, lenders or Tenant(s), (iii) determine whether Tenant(s) is complying with all its obligations hereunder, (iv) supply janitorial service and any other serviced to be provided by Landlord to tenant(s)hereunder, (v) post notices of non-responsibility, and (vi) make repairs as required of Landlord hereunder or repairs to any adjoining space or utility services or make repairs, alternations or improvements to any other portion or the Leased Premises; provided however that all such work shall be done as promptly as reasonably possible and so as to cause as little interference to Tenant(s) as reasonably possible. Tenant(s) hereby waives any claim for damages for any injury or inconveniences to or interference with Tenant's business, any loss of occupancy or quiet enjoyment of the Leased Premises or any other loss occasioned by such entry. Landlord shall have the right to use any and all means which Landlord may deem proper to open any doors, locks and/or security mechanisms or gain access in any emergency or in order to obtain entry into or onto the Leased Premises, and any entry into or onto the Leased Premises obtained by Landlord by any said means, or otherwise shall not under any circumstances be construed or

SS



EXHIBIT A

deemed to be forcible or unlawful entry into or a detainer of the Leased Premises or an eviction, actual or constructive, or Tenant(s) from the Leased Premises, or any portion thereof.

(b) If, in connection with any such inspection of the Leased Premises, Landlord deems that any repairs or maintenance to the Leased Premises are required to be made, which are Tenant's responsibility under this Lease, Landlord may demand that Tenant(s) made the same forthwith, and if Tenant(s) refuses or neglects to commence such repairs or maintenance and complete the same with reasonable dispatch; Landlord may make or cause such repairs to be made, and shall not be responsible to Tenant(s) for any loss or damage that may accrue to its business by reasons thereof. If Landlord makes or causes such repairs or maintenance to be made, Tenant(s) agrees that it will forthwith, on demand, pay to Landlord the cost thereof together with the next installment of Base Rent, any additional rent and any other payments due herein.

12. Extra Hazards:

Tenant(s) will not do or suffer to be done, or keep or suffer to be kept, anything in, upon or about the Leased Premises which will contravene Landlord's policies insuring against loss or damage by fire or other hazards (including, without limitations, public liability), or which will prevent Landlord from procuring such policies in companies acceptable to Landlord. If Tenant(s) shall cause anything to be done, omitted to be done or suffered to be done by Tenant, or kept or suffered by Tenant(s) to be kept in, upon or about the Premises, which causes the rate of fire or other insurance on the Leased Premises or other property of Landlord, in companies acceptable to Landlord, to be increased beyond the minimum rate from time to time applicable to the Leased Premises for the use permitted under this Lease or to any other property for the use or uses made thereof, unless tenant(s), shall pay as an additional charge, the amount of any increase upon Landlord's demand thereof. Further, Tenant(s) shall not install any electrical device, equipment and/or system which causes overloading of, or damage to the electrical system in, on or about the Leased Premises and/or the Building and/or the Marina; or keep in, on or about said Leased Premises and/or Building any flammable, combustible, hazardous or other dangerous material; or dispose of any chemical, environmentally unsafe or other hazardous waste except in strict accordance with all applicable Federal, State and local laws, ordinances and regulations.

13. Compliance with Laws and Regulations.

Tenant(s), at its sole expense shall promptly comply with all federal, sate and municipal laws, orders and regulations, and with all lawful directives. The Tenant, as its sole expense shall obtain all required licenses or permits for the conduct of its business with the terms of this Lease, or for the making of repairs, alterations, improvements, or additions. Landlord, when necessary, will join the Tenant(s) in applying for all such permits or licenses.

14. Condition of Leased Premises, Maintenance and Repair.

The Tenant(s) acknowledges that the Leased Premises are in good order and repair and accepts the Leased Premises in their "as is" condition, and expressly agrees that Landlord has no obligation and has made no promise to alter, remodel, improve, repair, decorate or paint the Leased Premises or any part thereof, or to pay for any such work. Tenant(s) shall, at all times during the term hereof and at Tenant(s) sole cost and expense, keep the Leased Premises and every part thereof in good condition and repair, ordinary wear and tear and damage thereto by fire (unless caused by Tenant), earthquake, act of God, or the element excepted. The Leased Premises shall be presumptively deemed not in "good repair" if Landlord received any citation

S S





EXHIBIT A

from any government agency with respect to the condition of the Leased Premises, or if any portion of the Leased Premises is in violation of any applicable law, at which time the Tenant(s) shall have thirty (30) days to correct any repair and/or violations listed on the citation.

The Tenant, at his expense, shall make all necessary repairs and replacements to the Leased Premises, including the repair and replacement of any portions of the Leased Premises and/or the Building and/or the Marina which are damaged due to the neglect of Tenant(s) including, but not limited to all dock components (structural and/or otherwise), pipes, electrical wiring, heating and plumbing systems, fixtures, Building seawall and/or related structures and systems, and all other systems and appliances and their appurtenances. The quality and class of all repairs and replacements shall be equal to or greater than the original worth. If Tenant(s) defaults in making such repairs or replacements, Landlord may make them for Tenant's account, and such expenses will be considered additional rent.

15. Alterations and Improvement.

Tenant(s) shall not make any alterations, or improvements, or improvements to, or install any fixtures on the Leased Premises without Landlord's prior written consent, which consent may be withheld for any reason whatsoever. If such consent is given, all alterations, additions, and improvements made, and fixtures installed by Tenant(s) shall become Landlord's property at the end of the Lease term. Any such alterations, additions or improvements to or of the Leased Premises or any part thereof, or any such attachments or fixtures or equipment thereto shall be made by the Tenant(s) at the Tenant(s) sole cost and expense. The contractor or person selected by Tenant(s) to make such alterations, additions or improvements to the Premises, consented to by Landlord, must maintain current business liability insurance with a coverage limit of not less then $2,000,000.00 per occurrence and must be approved in writing by Landlord prior to commencement of any work. Such contractor or person shall at all times be subject to Landlord's control while on the Leased Premises. Landlord may, however, require Tenant(s) to remove such fixtures, at Tenant's expense, at the end of the Lease term.

16. Substitution of Premises.

Landlord hereby reserves the right from time to time to relocate Tenant to any dock slip in Exhibit, "A" which is substantially similar to, or better than, Tenant's Dock Slips prior to or during the term of this Lease so long as the number of net rentable square feet so substituted approximately equals the number of net rentable square feet in linear Dock Slip space of the Leased Premises, and Landlord shall not have any liability with respect to any such relocation and substitution. From and after the date of such relocation and substations, the term "Dock Slip" as used herein shall mean the substituted space at the Premises, and Landlord and Tenant(s) shall initial, date and attach to this Lease a substitute Exhibit "A" showing the new Dock Slip. If such relocation occurs after Tenant has occupied the Dock Slip, or any such substituted Dock Slip, then Landlord shall bear the reasonable out of pocket expenses of moving Tenant's furnishings and equipment from the occupied Dock Slip to such substitute Dock Slip and shall at Landlord's sole cost and expense improve substituted Dock Slip with improvements substantially similar in quality and scope to those located in the Dock Slip theretofore occupied by Tenant. Tenant hereby acknowledges and agrees, for purposes of this provision, that any dock slip identified in Exhibit "A" meets the requirement of "similar to or better, than" the Leased Premises. The relocations of Tenant to any substituted Dock Slip will provide Tenant with at least the same linear footage of Dock Slip as that occupied by Tenant.

SS



EXHIBIT A

17. Assignment/Substitution Restrictions.

Tenant(s) may not assign this Commercial Lease or sublet the Leased Premises, or permit the use or occupancy of the Leased Premises by any person other than the Tenant(s), unless the Tenant(s) obtains prior written consent of the Landlord, which Landlord may give or withhold at its sole discretion. Any of the foregoing acts without such consent shall be void and shall, at the option of the Landlord, constitute a default that entitles Landlord to terminate this Lease. Any such consent by Landlord shall not release Tenant(s) from any of the Tenant(s) obligation hereunder or be deemed to be a consent to any subsequent hypothecation, assignment, subletting, occupation or use by another person. This Lease shall not, nor shall any in subsequent hypothecation, assignment, subletting, occupation or use by another person. This Lease shall not, nor shall any interest herein, be assignable as to the interest of Tenant(s) involuntarily or by operation of law without prior written consent of Landlord. Tenant(s) agrees that the instrument by which any assignment or subletting consented to by Landlord is accomplished shall expressly provide that (i) the assignee or subtenant will perform and observe all the agreements, covenants, conditions and provision to be performed and observed by Tenant(s) under this Lease as and when performance and observance is due, (ii) no assignee or subtenant shall have the further right to assign or sublet, and (iii) Landlord shall have the right to enforce such agreements, covenants, conditions and provisions directly against such assignee or subtenant. Tenant(s) shall in all cases remain responsible for the performance by any subtenant of all such agreements, covenants, conditions and provisions. Any assignment or subletting without an instrument containing the foregoing provisions shall be void and shall, at the option of Landlord, constitute a default that entitles Landlord to terminate this Lease.

Landlord reserves the right to transfer, sell or assign any and all rights under this Lease to any person or entity.

18. Insurance.

Tenant(s) shall, at its expense, during the term hereof, maintain and deliver to Landlord, binding business liability, bodily, and property damage insurance with respect to the Leased Premises for the protection of Waterfront Newport Beach, LLC, and others. Such policies shall name Tenant(s) as the insured's, and evidence minimum coverage of at least $2,000,000.00 per occurrence for injury or death to any one person and $2,000,000.00 for any one accident, and $2,000,000.00 with respect to damage to property. Tenant(s) shall provide Landlord at the inception of this Lease, and at any time upon request from Landlord, and original or a true and correct copy of a Certificate of Insurance evidencing the minimum coverage's outlined above. Tenant(s) shall also, in such policy, name Waterfront Newport Beach, LLC, and additional named insured's. Such insurance policy or policies shall provide for notice to be given to the Landlord in the event the policy is canceled or not renewed.

19. Indemnification of Landlord.

Tenant(s) shall defend, indemnify, and hold Landlord and others harmless from and against any claims, loss, expense or damage to any person or property in or upon the Leased Premises, or in or about any such vessel or any location within the Marina and/or the Building, arising out of Tenant(s) use or occupancy of the Leased Premises, or any such vessel or any location within the Marina and/or the Building, or arising out of any cause or act or neglect of Tenant(s) or its servants, employees, agents, or invitees. Any such claim, loss, expense or damage includes but is not limited to theft, fire, storm, collision, chaffing, or sinking, or otherwise.

SS



EXHIBIT A

Tenant(s) acknowledges it is solely liable for any and all claims, losses, expenses, and damages occurring on Marina property ("Marina property" includes the entirety of the Docks as shown on Exhibit "A") and hereby agrees to indemnify and hold Landlord exempt and harmless from and against any and all claims based on damage to any vessel or other vessel equipment or appurtenances located at the Marina, as well as from and against any personal injury or property damage claim or liability arising out of or relating to the operation of the Marina, whether the claim is based on a failure to maintain the Marina in a safe, clean and unobstructed condition or any other basis, during the effective period of this Lease.

20. Destruction of Premises.

The Tenant(s) will repair promptly at its expense any damage to the Leased Premises or any Vessel or other vessel equipment or appurtenances located at the Marina or on Marina property and/or at the Building or on Building property that is caused by bringing into or onto the Leased Premises or any other area of the Marina and/or the Building, any item, material, property or other thing for Tenant(s)' use or benefit, or by the installation or removal of such item, material, property or thing regardless of fault or by whom such damage shall be caused, unless caused by Landlord, its agents, employees or contractors; and in default of such repairs by Tenant(s), Landlord may make the same and Tenant(s) agrees to pay, as an additional charge, the cost thereof to Landlord promptly upon Landlord's demand therefore.

If the Leased Premises is damaged by fire or other casualty, at no fault of Tenant(s), and the damage is so extensive as to effectively constitute a total destruction of the property or Building, this Lease shall terminate and the rent shall be apportioned to the time of the damage. In all other cases of damage without Tenant(s)' fault, Landlord shall repair the damage with reasonable dispatch, and if the damage has rendered the Leased Premises wholly or partially untenantable, the rent shall be apportioned until the damage is repaired. In determining what constitutes reasonable dispatch, consideration shall be given to delays caused by strikes, adjustment of insurance, and other causes beyond the Landlord's control.

21. Condemnation.

If all, or any part of the Leased Premises is taken by eminent domain, this Lease shall expire on the date of such taking, and the rent shall be apportioned as of the date. No part of any such award shall belong to Tenant(s).

22. Events of Default.

The occurrence of any one or more of the following events ("Event of Default") shall constitute a breach of this Lease by Tenant(s);

(a) If Tenant(s) shall fail to pay any rent or additional rent or payments, when and as the same become due and payable, and said failure continues for a period of three (3) days following notice by Landlord; or,

(b) If Tenant(s) shall fail to pay any other sum or charge payable by Tenant(s) hereunder when and as the same becomes due and payable and such failure shall continue for more that ten (10) days following notice by Landlord; or,

SS





EXHIBIT A

(c) If Tenant(s) shall fail, to perform or observe any other agreement, covenant, or condition or provision hereof or of the "Rules and Regulations" specified in Paragraph No. 11 contained herein above to be performed or observed by Tenant(s) when and as performance or observance is due, such failure shall continue for more that thirty (30) days and Tenant(s) shall not within such period commence with due diligence and dispatch the curing of such default or, having so commenced, shall thereafter fail or neglect to prosecute or complete with due diligence and dispatch the curing of such default; or,

(d) If Tenant(s) shall make a general assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts as the become due, or shall file a petition in bankruptcy, or shall be adjudicated as bankrupt or insolvent, or shall file a petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, or shall file an answer admitting or shall fail timely to content the material allegations of a petition filed against it in any such proceedings, or shall seek or consent the material allegations of a petition filed against it in any such proceeding, or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Tenant(s) or any material part of its properties; or,

(e) If within sixty (60) days after the commencement of any proceeding against Tenant(s) seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceeding shall not have been dismissed or if within sixty (60) days after the appointment without the consent or acquiescence of Tenant(s) of any trustee, receiver of liquidator or Tenant(s) or of any material part of its properties, such as appointment shall not have been vacated; or,

(f) If this Lease or any estate of tenant(s) hereunder shall be levied upon under any attachment or execution, and such attachment or execution is not vacated within ten (10) days; or,

(g) If Tenant(s) shall vacate or abandon the Leased Premises or any part thereof at any time during the term of this Lease, whether or not Tenant(s) continues to pay Base Rent, additional rent and any other sums payable under this Lease.

23. Termination Upon Default.

If an Event of Default shall occur, Landlord at any time thereafter may give written termination notice to Tenant(s) and on the fate specified in such notice. Tenant(s) right to possession shall terminate and this Lease shall terminate. Upon such terminations, Landlord may recover from Tenant(s):

(a) The worth at the time of award of the unpaid rent, which had been earned at the time of termination.

(b) The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award, exceeds the amount of such rental loss that Tenant(s) proves could be reasonably avoided; and,

(c) The worth at the time of award of the amount by which unpaid rent for the balance of the term of this Lease after the time of award, exceeds the amount of such rental loss that Tenant(s) proves could be reasonably avoided; and, SS





EXHIBIT A

(d) Any other amount necessary to compensate Landlord for all the detriment approximately caused by Tenant(s) failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom. The "worth at the time of award" of the amounts referred to in clauses (a) and (b) above shall be computed by allowing interest at the maximum annual interest rate allowed by law on the date of termination for business loans (not primarily for personal, family or household purposes) not exempt from the usury law, or if there is not such maximum annual interest rate, at the "Prime Rate" charged on such termination date plus five (5%) percentage points. As used in this Lease, the term "Prime Rate" shall mean the prime annual interest rate as announced from time to time in the Wall Street Journal. The "worth at the time of award" of the amount referred to in clause (c) above shall be completed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus one percent (1%). For the purpose of determining unpaid rent under clause (a), (b), (c) above, the monthly rent served in this Lease shall be deemed to be the sum of the Base Rent due under Paragraph No. 3 contained herein above and the sum of the Additional Rent due by Tenant(s) under Paragraph No. 5 contained herein above.

24. Landlord's Right upon Defaults.

In the event of any breach of this Lease by the Tenant(s), which shall not have been cured within ten (10) days, then the Landlord, besides other rights or remedies it may have shall have the immediately right of reentry and may remove all persons and property from the Leased Premises; such property may be removed and stored in a public warehouse or elsewhere at the cost of, and for the account of, Tenant(s). If the Landlord elects to re-enter as herein provided, or should it take possession pursuant to any notice provided for by law, it may either terminate this Lease or may, from time to time, without terminating this Lease, re-let the Leased Premises or any part thereof, for such term or terms and at such rental or rentals and upon such other terms and conditions as the Landlord in Landlord's own discretion may deem advisable. Should rentals received from such re-letting during any month be less than that agreed to be paid during the month by the Tenant(s) hereunder, the Tenant(s) shall pay such deficiencies to the Landlord monthly. The Tenant(s) shall also pay to the Landlord, as soon as ascertained, the costs and expenses incurred by the Landlord, including reasonable attorney's fees, relating to such re-letting.

25. Continuation After Default.

Even though Tenant(s) has breached this Lease, this Lease shall continue in effect for so long as Landlord does not terminate the Tenant(s) right to possession, and Landlord may enforce all of its rights and remedies under this Lease, including the right to recover the rent as it becomes due under this Lease. Acts of maintenance or preservation or efforts to re-let the Leased Premises or the appointment of a receiver upon the initiative of Landlord to protect Landlord's interest under this Lease shall not constitute a termination of Tenant(s)' right to possession unless written notice of termination is given by Landlord to Tenant(s).

26. Landlord's Right to Cure Defaults.

All agreements, covenants, conditions and provisions to be performed or observed by Tenant(s) under this Lease shall be at its sole cost and expense and without any abatement of rent. If Tenant(s) shall fail to pay any sum of money, other that rent, required to be paid by it hereunder, or shall fail to perform any other act on its part to be performed hereunder, Landlord, may, but shall not be obligated so to do, and without waiving or releasing Tenant(s) from any obligation of Tenant(s), make any such payment or perform any such other act on Tenant(s)' part

SS





EXHIBIT A

to be made or performed as in this Lease provided. All sums so paid by Landlord and all necessary incidental costs shall be deemed additional rent hereunder and shall be payable to Landlord on demand, together with interest thereon at the maximum annual interest rate, and the Prime Rate (as defined in Paragraph No. 24(d) herein above) charged on the date of expenditure by Landlord plus five (5%) percentage points, from the date of expenditure by Landlord to the date of repayment by Tenant(s) and Landlord shall have (in addition to any other right or remedy of Landlord) the same rights and remedies the event of nonpayment thereof by Tenant(s) as in the case of default by Tenant(s) in the payment of rent.

27. Other Relief.

The remedies provided for in this Lease for a breach hereof by Tenant(s) are cumulative and in addition to any other remedies to Landlord at law or in equity or by statute or otherwise.

28. Quiet Enjoyment.

The Landlord agrees that if the Tenant(s) shall pay the rent as aforesaid and perform the covenants and agreements herein contained on its part to be performed, the Tenant(s) shall peaceably hold and enjoy the said rented Leased Premises without hindrance or interruption by the Landlord or by any other person acting under or through the Landlord.

29. Landlord's Right to Enter.

Landlord may, at reasonable times, enter the Leased Premises to inspect it, to make repairs or alterations, and for purposes including, but not limited to showing it to potential buyers, lenders or tenant(s).

30. Surrender Upon Termination.

At the end of the Lease term the Tenant(s) shall surrender the Leased Property in as good condition as it was in at the beginning of the term, reasonable use and wear excepted.

31. Subordination.

This Lease, and the Tenant(s) leasehold interest, is and shall be subordinate, subject and inferior to any and all liens and encumbrances now and thereafter placed on the Leased Premises by the Landlord, including any and all extensions of such liens and encumbrances and all advances paid under such liens and encumbrances.

32. Holding Over.

If, without objection by Landlord, Tenant(s) holds possession of the Leased Premises after expiration of the term of this Lease, Tenant(s) shall become a Tenant(s) from month to month upon the terms herein specified, but at a monthly rent double (200%) the then prevailing monthly rent paid by Tenant(s) at the expiration of the term of this Lease pursuant to all the provisions of Paragraphs No's 3, 4, 5, and 6 contained herein above; payable in advance on or before the first of each month. Each party shall give the other written notice at least one month prior to the date of such termination of such monthly tenancy of its intention to terminate such tenancy.

SS





EXHIBIT A

33. Abandonment.

Tenant(s) shall not vacate or abandon the Leased Premises or any part thereof at any time during the term hereof. Tenant(s) understands that if Tenant(s) should leave the Leased Premises or any part thereof vacant, the risk of fire, other such casualty, and vandalism to the Lease Premises and the Building will be increased and that therefore, such action by Tenant(s) shall constitute a material breach of this Lease, whether or not Tenant(s) continues to pay rent and additional rent under this Lease. If Tenant(s) shall vacate, abandon or surrender the Leased Premises, or be dispossessed by process of law or otherwise, any personal property belonging to Tenant(s) and left on the Leased Premises shall not be deemed to be abandoned, at the option of Landlord, and Landlord may sell or otherwise dispose of such personal property in any commercially reasonable manner.

34. Waiver.

The waiver by Landlord or Tenant(s) of any breach of agreement, covenant, condition or provision herein contained, shall not be deemed to be waiver of any subsequent breach of the same or any other agreement, covenant, condition or provision herein contained, nor shall any custom or practice which may grow up between Landlord and Tenant(s) in the administration of this Lease be construed to waive or to lessen the right of Landlord or Tenant(s) to insist upon the performance by Landlord or Tenant(s) in strict accordance with this Lease. The subsequent acceptance of rent hereunder by Landlord, or the payment of rent by Tenant(s), shall not be deemed to be a waiver of any preceding breach by Landlord or Tenant(s) of any agreement, covenant, condition or provision of this Lease, other than the failure of Tenant(s) to pay the particular rent so accepted, regardless of Landlord's or Tenant(s)' knowledge of such preceding breach at the time of acceptance or payment of such rent.

35. Notices.

All notices and demands which may or are required to be given by either Landlord or Tenant(s) to the other hereunder shall be deemed to have been fully given when made in writing and deposited in the United States mail, certified or registered, postage prepaid and addressed as follows; to Tenant(s) at its address for notices specified on Page No. 1 herein above, or to such other place as Tenant(s) may from time to time designate in a notice to Landlord, or delivered to Tenant(s) at the premises; to Landlord at its address for notices specified on Page No. 1 herein above, or to such other place as Landlord may from time to time designate in a notice to Tenant(s). Tenant(s) hereby appoints as its agent to receive the service of all dispossessory or designate proceedings and notices thereunder the person in charge

36. Severability.

If any clause or provision herein shall be adjudged invalid or unenforceable by a court of competent jurisdiction or by operation of any applicable law, it shall not affect the validity of any other clause or provision, which shall remain in full force and effect.

37. Complete Agreement.

There are no oral agreements between Landlord and Tenant(s) affecting this Lease, and this Lease supercedes and cancels any and all previous negotiations, arrangements, brochures, agreements and understanding, oral and written, if any, between Landlord and Tenant(s) or displayed by Landlord to Tenant(s) with respect to the subject matter of this Lease, the Leased





EXHIBIT A

Premises. There are no representations between Landlord and Tenant(s) or between any real estate broker and Tenant(s) other than those contained in this Lease. This Lease may not be amended or modified in any respect whatsoever except by an instrument in writing signed by Landlord and Tenant(s).

38. Successors.

This Lease is binding on all parties who lawfully succeed to the rights or take the place of the Landlord or Tenant(s).

39. Attorney's Fees.

In the event of any action or proceeding at law or in equity between Landlord and Tenant(s) to enforce any provision of this Lease or to protect or establish any right or remedy of either Landlord or Tenant(s) hereunder, the unsuccessful party to such action or proceeding shall pay to the prevailing party all costs and expenses, including reasonable attorney's fees and costs, incurred by such prevailing party in such action or proceeding and in any appeal in connection therewith, and if such prevailing party shall recover judgment in any such action, proceeding or appeal, such costs, expenses and attorney's fees shall be included in and as part of such judgment.

IN WITNESS WHEREOF the parties have set their hands and seals on this 17th day of November 2008.

WATERFRONT NEWPORT BEACH, LLC

Landlord or Landlord's Authorized Agent

AMERICAN YACHT CHARTERS, INC. / STUART SITKO

Tenant



EXHIBIT A

# EXHIBIT "A"

## 2901 West Coast Highway, Newport Beach, CA

(All changes shown herein below previously completed)




Agreed and accepted: ______________________ Date: 11-17-08

Information provided herein has been obtained from third-party sources and has not been verified for accuracy. Tenant to verify.

EXHIBIT A

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

**SACV10- 1492 JVS (RNBx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs)*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[X] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET



I (a) PLAINTIFFS (Check box if you are representing yourself ☐)
WATERFRONT NEWPORT BEACH, LLC, a California Limited Liability Corporation

DEFENDANTS
P/V ENDEAVOR, U S C G Official No 582496, a vessel approximately 109 6-feet in length and 28 3-feet in breadth, & ALL OF HER ENGINES, TACKLE, etc in rem, & AMERICAN YACHT CHARTERS,a California corporation in personam

(b) Attorneys (Firm Name, Address and Telephone Number If you are representing yourself, provide same )
BRODSKY MICKLOW BULL & WEISS
2608 Shelter Island Drive, Suite 202, San Diego, CA 92106
Phone: (619) 225-8884

Attorneys (If Known)

II. BASIS OF JURISDICTION (Place an X in one box only )

☐ 1 U S Government Plaintiff
☑ 3 Federal Question (U S Government Not a Party)
☐ 2 U S Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant )

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

IV. ORIGIN (Place an X in one box only )

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

V. REQUESTED IN COMPLAINT: JURY DEMAND: ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint )

CLASS ACTION under F.R.C.P. 23: ☐ Yes ☑ No ☑ MONEY DEMANDED IN COMPLAINT: $ 99,416.72 through 9/22/10 + costs interest & sur

VI. CAUSE OF ACTION (Cite the U S Civil Statute under which you are filing and write a brief statement of cause Do not cite jurisdictional statutes unless diversity )
46 U.S.C. sections 31301, et seq. (Commercial Instruments and Federal Maritime Lien Act)

VII. NATURE OF SUIT (Place an X in one box only )

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Act
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Info Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**CONTRACT**
- ☐ 110 Insurance
- ☑ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excl Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Fed Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury-Med Malpractice
- ☐ 365 Personal Injury-Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus-Alien Detainee
- ☐ 465 Other Immigration Actions

**TORTS — PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 American with Disabilities - Employment
- ☐ 446 American with Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus/Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE / PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R R & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety /Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt Relations
- ☐ 730 Labor/Mgmt Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl Ret Inc Security Act

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U S Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

FOR OFFICE USE ONLY: Case Number: **SACV10-01492 JVS (RNBx)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): ______

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): ______

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County - P/V ENDEAVOR<br>Orange County - American Yacht Charters, Inc. | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County - All Claims | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** 10/1/10

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |