1  WRIGHT & L'ESTRANGE
       William E. Dysart (SBN 042608)
2       Alexander T Gruft (SBN 223096)
   401 West A Street, Suite 2250
3  San Diego, California 92101
   (619) 231-4844
4  (619) 231-6710 (fax)
   agruft@wllawsd.com
5
   Attorneys for Plaintiff-in-Intervention
6  Bank of America, N.A.

7

8              UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA          **BY FAX**

10 WATERFRONT NEWPORT BEACH,          ) CASE NO. SACV10-1492 JVS(RNBx)
   LLC, a California Limited Liability  )
11 Corporation,                        ) IN ADMIRALTY
                                        )
12            Plaintiff,                ) [PROPOSED] VERIFIED
                                        ) COMPLAINT IN
13      v.                              ) INTERVENTION *IN REM* AND *IN*
                                        ) *PERSONAM* TO FORECLOSE
14 P/V ENDEAVOR, U.S.C.G. Official      ) FIRST PREFERRED SHIP'S
   No. 582496, a vessel approximately   ) MORTGAGE, FOR DEFICIENCY
15 109.6-feet in length and 28.3-feet in ) JUDGMENT, AND TO
   breadth, AND ALL OF HER ENGINES,    ) FORECLOSE ON REAL
16 TACKLE, ACCESSORIES,                 ) PROPERTY
   EQUIPMENT, FURNISHINGS AND           )
17 APPURTENANCES, in rem, and          ) Complaint Filed: October 4, 2010
   AMERICAN YACHT CHARTERS,            ) Arrest of Vessel: October 12, 2010
18 INC., a California corporation, in    )
   personam,                           ) Courtroom 10C – 10th Floor
19                                      )
              Defendants.               )
20                                      )
   BANK OF AMERICA, N.A., a            )
21 Delaware corporation;                )
                                        )
22     Plaintiff-in-Intervention,       )
                                        )
23      v.                              )
                                        )
24 ENDEAVOR CHARTERS, INC., a          )
   California corporation; P/V          )
25 ENDEAVOR, U.S.C.G. Official No.      )
   582496, a vessel approximately 109.6-)
26 feet in length and 28.3-feet in breadth,)
   AND ALL OF HER ENGINES,             )
27 TACKLE, ACCESSORIES,                 )
   EQUIPMENT, FURNISHINGS AND           )
28 APPURTENANCES, in rem, and          )
   AMERICAN YACHT CHARTERS,            )

_____
                              CASE NO. SACV 10-1492-JVS(RNBx)

INC., a California corporation, in
personam; STUART SITKO, an
individual; ANDREA WAITE, an
individual; and DOES 1 through 10,

      Defendants-in-Intervention.

Plaintiff-in-Intervention BANK OF AMERICA, N.A., successor by merger to LaSalle Bank National Association, as Indenture Trustee for the benefit of the Noteholders, the Certificateholders and the SBA, as their interests may appear under the Multi-Party Agreement dated January 1, 2006, alleges against the P/V ENDEAVOR, ENDEAVOR CHARTERS, INC., a California corporation, AMERICAN YACHT CHARTERS, INC., a California corporation, STUART SITKO, ANDREA WAITE, and DOES 1 through 10 ("Defendants") as follows:

### JURISDICTION AND VENUE

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules For Admiralty or Maritime Claims and Asset Forfeiture Actions.

2.     The admiralty jurisdiction of this Court over the instant action is properly exercised – both *in personam* and *in rem* – under 28 U.S.C. section 1333; federal question jurisdiction under 28 U.S.C. section 1331; and the Commercial Instrument and Maritime Liens Act (formerly the Ship Mortgage Act), 46 U.S.C. section 31301-31343.

### PARTIES

3.     Plaintiff-in-Intervention Bank of America, N.A. ("BANK OF AMERICA") is a corporation, and at all time herein mentioned was duly organized and existing according to the laws of the State of Delaware, with its principal place of business locate at 401 North Tryon Street, North Carolina, 28255.  BANK OF AMERICA is the successor by merger to LaSalle Bank National Association, as Indenture Trustee for the benefit of the Noteholders, the

2

Certificateholders and the SBA, as their interests may appear under the Multi-Party Agreement dated January 1, 2006.

4.     Business Loan Center, LLC ("BLC") is a Delaware limited liability company, and at all time herein mentioned was duly organized and existing according to the laws of the State of Delaware, with its principal place of business in Greenville, North Carolina. BLC is, and at all times mentioned hereunder was, authorized to act on behalf of BANK OF AMERICA in BLC's capacity as servicer of the loan to Defendants, and has the power to do so under a Sale and Servicing Agreement dated January 1, 2006.

5.     Defendant P/V ENDEAVOR, United States Coast Guard Official Number 971234, its engines, machinery, appurtenances, dinghies, tenders, etc., is a 1977 steel-hulled, 109.6-foot inspected passenger vessel built in Freeland, Washington and is, and was at all times mentioned herein, a documented vessel under a Certificate of Documentation issued by the United States Coast Guard (the "VESSEL").

6.     Defendant ENDEAVOR CHARTERS, INC. ("ENDEAVOR"), is a California corporation, which on information and belief is doing business in Newport Beach, California, and is the 100% owner and operator of the VESSEL.

7.     Defendant AMERICAN YACHT CHARTERS, INC. ("AYC") is a California corporation, which on information and belief is doing business in Newport Beach, California.

8.     Defendant STUART SITKO ("SITKO") is, and at all times mentioned herein was, a California resident, and is the President and Secretary of ENDEAVOR, and the President of AYC.

9.     Defendant ANDREA WAITE ("WAITE") is, and at all times mentioned herein was, a California resident, and, on information and belief, is the Executive Vice-President of AYC.

10.     Does 1 through 10 inclusive, are unknown to BANK OF AMERICA,

3

which therefore sues said Defendants by such fictitious names.   BANK OF AMERICA will request leave of Court to amend this Complaint-in-Intervention to allege their true names and capacities when ascertained.   BANK OF AMERICA is informed and believes that some or all of the Defendants are the agents, servants, employees, partners, alter egos, or representatives of other Defendants and performed the acts mentioned in this Complaint-in-Intervention during the course and scope of their agency, servitude, employment, partnership, alter ego, or representative relationship or under the direction or with knowledge and approval of their principals, masters, employers or partners.

## GENERAL ALLEGEGATIONS

11.   On or about April 20, 2005, ENDEAVOR made, executed, and delivered a Promissory Note in favor of BLC in the original principal sum of One Million Seven Hundred Sixty-five Thousand Dollars and 00/100 Cents ($1,765,000.00), together with interest on the unpaid principal balance as provided therein ("Promissory Note").   A true and correct copy of the Promissory Note is attached hereto as Exhibit "A" and is incorporated herein by reference.

12.   On or about April 20, 2005, in order to secure payment of the indebtedness under the Promissory Note and the performance of any other obligations then existing or thereafter created, ENDEAVOR, the sole owner of 100% of the whole of the VESSEL, executed and delivered to BLC, in accordance with and pursuant to the laws of the United States, a First Preferred Ship's Mortgage covering the VESSEL (the "Ship Mortgage"), and by the terms of the Ship Mortgage, assigned and mortgaged the VESSEL to BLC to secure payment of the Promissory Note and the performance of any other obligations then existing or thereafter created.   A true and correct copy of the Ship Mortgage is attached hereto as Exhibit "B" and is incorporated herein by reference.   On or about May 11, 2005, the Ship Mortgage was duly recorded with the National Vessel Documentation Center, United States Coast Guard, Batch No. 370420,

4

Document ID 3679458.

13.   On or about April 20, 2005, AYC, SITKO, and WAITE each executed and delivered to BLC separate Unconditional Guaranties, by the terms of which SITKO, AYC, and WAITE unconditionally guaranteed payment by ENDEAVOR of all amounts owing under the Promissory Note. True and correct copies of the Unconditional Guaranties for AYC, SITKO and WAITE are attached hereto as Exhibits "C", "D", and "E", respectively, and incorporated herein by reference.

14.   To secure payment of the principal sum and interest due under the Promissory Note and Ship Mortgage, SITKO made, executed and delivered to BLC, as beneficiary, a First Deed of Trust With Assignment of Rents, dated as of April 20, 2005 ("Deed of Trust"), by the terms of which SITKO conveyed to First American Title Insurance Company National Commercial Services, as trustee, real property located at 1400 Topanga Skyline Drive, Topanga, California 90290 (the "Real Property"). The Deed of Trust was recorded on April 25, 2005 as instrument number 05 0949904 in the Recorder's Office of Los Angeles County. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "F" and is incorporated herein by reference.

15.   On or about April 29, 2005, BLC advanced $1,765,000.00 to ENDEAVOR pursuant to the loan evidenced by the Promissory Note.

16.   By mesne assignments, BLC assigned its beneficial interest in the Promissory Note, Unconditional Guaranties, Deed of Trust and other documents related to the loan to BANK OF AMERICA. Assignments of Beneficial Interest Under Deed of Trust were recorded on February 15, 2011 as instrument numbers 20110248096, 20110248097 and 20110248098 in the Recorder's Office of Los Angeles County. True and correct copies of the Assignments of Beneficial Interest Under Deed of Trust are attached hereto as Exhibit "G" and are incorporated herein by reference.

17.     Attached hereto as Exhibit "H" is a true and correct copy of an Abstract of Title for the VESSEL issued by the United States Coast Guard on October 16, 2010 showing BLC as the beneficial owner of the interest secured by the Ship Mortgage.

18.     On March 7, 2011, BLC assigned the beneficial interest in the Ship Mortgage to BANK OF AMERICA pursuant to a written Assignment of Beneficial Interest In First Preferred Ship's Mortgage ("Mortgage Assignment"). On March 9, 2011, the Mortgage Assignment was sent to the United States Coast Guard, National Vessel Documentation Service, for recording. Attached hereto as Exhibit "I" is a true and correct copy of the transmittal letter to the United States Coast Guard with the Mortgage Assignment attached.   The United States Coast Guard is backlogged on processing mortgage information for commercial vessels to September 9, 2010.

19.     ENDEAVOR is presently the sole 100% owner of the whole of the VESSEL.

20.     There is now a default under the terms of the Promissory Note, Ship Mortgage and Unconditional Guaranties based on, *inter alia*, ENDEAVOR's failure to pay all principal and interest due under the Note for the months of November and December 2010 and January 2011.   As a consequence of the default, there is now due and owing to BANK OF AMERICA under the Promissory Note, as of the filing of this Complaint-in-Intervention, the sum of $1,704,368.97, plus prejudgment interest at the daily rate of $256.49, late charges, and attorneys' fees and costs.

21.     As a result of the aforesaid default by ENDEAVOR, there is now a default under the Ship Mortgage. The laws of the United States provide that upon default of any term of a preferred mortgage, the mortgage holder may enforce its claim for outstanding indebtedness against the mortgaged vessel, *in rem*, or *in personam*, in admiralty against the mortgagor or guarantor for the amount of the

6

1  outstanding indebtedness or any deficiency in full payment of that indebtedness

2  (46 U.S.C. § 31325(b)).

3      22.    The VESSEL is afloat upon the navigable waters of the United States

4  and within this Judicial District and the Court's jurisdiction.

5      23.    On October 4, 2010, Waterfront Newport Beach, LLC

6  ("Waterfront") filed a verified complaint in admiralty against the VESSEL and

7  AYC for money damages for breach of maritime contract, *quantum meruit*, and

8  trespass ("Waterfront Complaint"). Waterfront operates a commercial wharf in

9  Newport Beach, California (Waterfront Complaint, at ¶2). Waterfront alleges that

10  it entered into a Commercial Lease "on or about November 17, 2008" with AYC

11  whereby Waterfront agreed to provide wharfage and other services to AYC for

12  the benefit of the VESSEL (Waterfront Complaint, at ¶5). AYC failed to pay

13  amounts due under the Commercial Lease and, on September 8, 2010, the Orange

14  County Superior Court entered Judgment in favor of Waterfront and against AYC

15  for unlawful detainer (Waterfront Complaint, at ¶9). The Judgment was limited

16  awarding Waterfront possession and did not include an award of money damages

17  for unpaid wharfage fees or other costs (Id.). On September 10, 2010, Waterfront

18  obtained a Writ of Execution directing the Sheriff or Marshall of Orange County

19  to execute on a Writ of Possession (Waterfront Complaint, at ¶10). Waterfront's

20  claims for breach of contract, *quantum meruit* and trespass in this admiralty action

21  are based AYC's alleged failure to remove the VESSEL from Waterfront's wharf

22  and her continued occupancy "without contractual or any other authority, and

23  without payment of any kind to [Waterfront]" (Waterfront Complaint, at ¶11).

24  Having failed to obtain damages in its state court action, Waterfront now claims

25  damages "of not less than $99,416.72" for past due wharfage fees (Waterfront

26  Complaint, at ¶13).

27      24.    Without waiving any claims or defenses it may have, BANK OF

28  AMERICA disputes the priority and merits of Waterfront's admiralty claims on

7

the grounds that BANK OF AMERICA's Ship Mortgage, recorded with the U.S. Coast Guard on May 11, 2005, arose before, and has priority over, Waterfront's alleged preferred maritime lien claim (46 U.S.C. § 31301(5)); Waterfront does not possess a preferred maritime lien based on tort because its trespass claim is, in substance, a claim for breach of contract; and to the extent Waterfront has validly pleaded a maritime lien claim based on tort, its damages relate back only to the date its state court Judgment became final and end upon arrest of the Vessel.

## FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT AND FIRST PREFERRED SHIP'S MORTGAGES *IN PERSONAM* AGAINST DEFENDANT ENDEAVOR

25.    BANK OF AMERICA hereby realleges and incorporates herein by reference each and every allegation herein above.

26.    Pursuant to the Mortgage Assignment, BANK OF AMERICA is the mortgagee under the Ship Mortgage, which was duly recorded with the National Vessel Documentation Center, United States Coast Guard, on or about May 11, 2005. All requirements of the laws of the United States relating to preferred ship mortgages were duly met or were caused to be met by BANK OF AMERICA or its assignor. The indebtedness owed to BANK OF AMERICA by ENDEAVOR under the Promissory Note, and secured by the Ship Mortgage on the VESSEL, is a valid preferred ship mortgage lien on the VESSEL.

27.    ENDEAVOR failed to make the proper monthly payments as required under the Promissory Note for November and December 2010, and January 2011.

28.    As result of the aforesaid default, ENDEAVOR is in default under the Promissory Note and Preferred Mortgage.

29.    Under the terms of the Promissory Note, the total amount due and owing to BANK OF AMERICA as of the filing of the Complaint-in-Intervention is the sum of $1,704,368.97, plus prejudgment interest at the daily rate of

1    $256.49, late charges, and attorneys' fees and costs.

2        30.    BANK OF AMERICA has a maritime lien upon and against the

3    VESSEL pursuant to 46 U.S.C. section 31341, in the sum of $1,704,368.97,

4    together with accrued and unpaid interest, late charges, costs and attorneys' fees.

5        31.    BANK OF AMERICA is entitled to attorneys' fees and costs

6    pursuant to the terms of the Promissory Note and Preferred Mortgage.

7    **SECOND CLAIM FOR RELIEF – FORECLOSURE OF PREFERRED**

8    **SHIP'S MORTGAGES PURSUANT TO 46 U.S.C. SECTION 31325**

9    **AGAINST ENDEAVOR, *IN PERSONAM*, AND THE VESSEL, *IN REM***

10       32.    BANK OF AMERICA hereby realleges and incorporates herein by

11   reference each and every allegation herein above.

12       33.    BANK OF AMERICA has a maritime lien against the VESSEL, *in*

13   *rem*, for any and all amounts that are or will be due and owing under the

14   Promissory Note, including prejudgment interest in accordance with the

15   Promissory Note.

16       34.    BANK OF AMERICA is entitled to foreclose its maritime lien and

17   satisfy any and all obligations arising under the Promissory Note, including the

18   attorneys' fees and costs under the Promissory Note, the costs of bringing this

19   action, and any costs for arresting, preserving and selling the VESSEL, against

20   ENDEVEAVOR, *in personam,* and the VESSEL, *in rem.*

21   **THIRD CLAIM FOR RELIEF – BREACH OF UNCONDITIONAL**

22   **GUARANTEE AGAINST AMERICAN YACHT CHATERS, INC.**

23       35.    BANK OF AMERICA hereby realleges and incorporates herein by

24   reference each and every allegation herein above.

25       36.    Pursuant to the terms of an April 20, 2005 Unconditional Guarantee,

26   AYC is obligated to pay BANK OF AMERICA all amounts currently due and

27   owing to BANK OF AMERICA under the terms of the Promissory Note.

28       37.    AYC is in breach of the terms of the Unconditional Guarantee

1  having failed to make payments as required under the Promissory Note and
2  pursuant to the terms of the Unconditional Guarantee.

3      38.    BANK OF AMERICA is entitled to judgment, jointly and severally,
4  against AYC in the amount of $1,704,368.97, together with accrued and unpaid
5  interest, late charges, costs and attorneys' fees incurred to commence this action.

6  **FOURTH CLAIM FOR RELIEF – BREACH OF UNCONDITIONAL**
7  **GUARANTEE AGAINST STUART SITKO**

8      39.    BANK OF AMERICA hereby realleges and incorporates herein by
9  reference each and every allegation herein above.

10      40.    Pursuant to the terms of an April 20, 2005 Unconditional Guarantee,
11  SITKO is obligated to pay BANK OF AMERICA all amounts currently due and
12  owing to BANK OF AMERICA under the terms of the Promissory Note.

13      41.    SITKO is in breach of the terms of the Unconditional Guarantee
14  having failed to make payments as required under the Promissory Note and
15  pursuant to the terms of the Unconditional Guarantee.

16      42.    BANK OF AMERICA is entitled to judgment, jointly and severally,
17  against SITKO in the amount of $1,704,368.97, together with accrued and unpaid
18  interest, late charges, costs and attorneys' fees incurred to commence this action.

19  **FIFTH CLAIM FOR RELIEF – BREACH OF UNCONDITIONAL**
20  **GUARANTEE AGAINST ANDREA WAITE**

21      43.    BANK OF AMERICA hereby realleges and incorporates herein by
22  reference each and every allegation herein above.

23      44.    Pursuant to the terms of an April 20, 2005 Unconditional Guarantee,
24  WAITE is obligated to pay BANK OF AMERICA all amounts currently due and
25  owing to BANK OF AMERICA under the terms of the Promissory Note.

26      45.    WAITE is in breach of the terms of the Unconditional Guarantee
27  having failed to make payments as required under the Promissory Note and
28  pursuant to the terms of the Unconditional Guarantee.

46.  BANK OF AMERICA is entitled to judgment, jointly and severally, against WAITE in the amount of $1,704,368.97, together with accrued and unpaid interest, late charges, costs and attorneys' fees incurred to commence this action.

### SIXTH CLAIM FOR RELIEF – FORECLOSURE OF REAL PROPERTY AGAINST STUART SITKO, *IN PERSONAM*

47.  BANK OF AMERICA hereby realleges and incorporates herein by reference each and every allegation herein above.

48.  A legal description of the Real Property is attached hereto as Exhibit "F" and is incorporated herein by reference.

49.  SITKO is the record owner of the Real Property.

50.  On April 20, 2005, for valuable consideration, SITKO made, executed and delivered to BLC the Promissory Note, attached hereto as Exhibit "A", for the principal sum of $1,765,000.00, plus interest as set forth in the Promissory Note and related documents.

51.  To secure payment of the principal sum and interest on the Promissory, and Defendants' other obligations under the Ship Mortgage and Unconditional Guaranties, SITKO made, executed and delivered to BLC the Deed of Trust attached hereto as Exhibit "F". The Deed of Trust was later assigned to BANK OF AMERICA by mesne assignment as evidenced by the recorded Assignments of Beneficial Interest Under Deed of Trust attached hereto as Exhibit "G".

52.  BANK OF AMERICA is now, and at all times relevant to this action was, the lawful owner and holder of the Promissory Note and beneficial interest under the Deed of Trust.

53.  The Promissory Note and Deed of Trust provide that upon the occurrence of any Event of Default, as defined in those documents, BANK OF AMERICA may declare the outstanding principal balance together with all accrued and unpaid interest thereon and all related charges to be immediately due

11

and payable.

54. An Event of Default, as defined in the Note and Deed of Trust, has occurred by, among other things, ENDEAVOR, SITKO, AYC AND WAITE's failure to pay principal and interest due under the Promissory Note and default under the Ship Mortgage. For such Event of Default, BANK OF AMERICA has elected to declare the entire remaining sum of principal and interest immediately due and payable.

55. By the terms of the Deed of Trust, for the exercise of any of BANK OF AMERICA's rights under section 5.11 of the Deed of Trust, or for the exercise of any other rights at law or in equity, SITKO agreed to bear responsibility for the reasonable attorneys' fees and costs incurred, together with interest at the rate set forth in the Note, to be secured by the Deed of Trust.

**WHEREFORE,** Plaintiff BANK OF AMERICA prays for judgment as follows:

1. That the Preferred Mortgage and maritime lien resulting therefrom be recognized as the paramount lien against the VESSEL, and the Preferred Mortgage be foreclosed and the VESSEL, her engines, tackle, furniture and apparel, be condemned and sold to pay the claims and demands of BANK OF AMERICA, with interest and costs and that BANK OF AMERICA may have such other and further relief as in the law and justice it may be entitled and that BANK OF AMERICA may become purchaser at any sale of the mortgaged vessel;

2. That the Preferred Mortgage and statutory lien arising therefrom be declared valid against the VESSEL the sum of $1,704,368.97, plus prejudgment interest at the daily rate of $256.49, late charges, and attorneys' fees and costs, together with all other amounts which have been or are required to be disbursed by or on behalf of BANK OF AMERICA for any advances, expenses, attorneys' fees, costs and disbursements by BANK OF AMERICA, together with post-

12

judgment interest at the maximum statutory rate, with such liens to be prior and superior to the interest of maritime and non-maritime liens or claims of any and all persons, firms or corporations whatsoever;

3.     That the Court enter judgment in BANK OF AMERICA's favor for the full amount of ENDEAVOR's breach of the Promissory Note and SITKO, AYC, and WAITE's breach of their Unconditional Guaranties, in the amount of $1,704,368.97, plus prejudgment interest at the daily rate of $256.49, late charges, and attorneys' fees and costs against ENDEAVOR, SITKO, AYC, WAITE and all other defendants who may appear, and the VESSEL.

4.     That the VESSEL be condemned and sold pursuant to the practices of this Court sitting in admiralty and that BANK OF AMERICA's claims be paid from the funds realized at such sale;

5.     That a judgment against ENDEAVOR, SITKO, AYC and WAITE and DOES 1-10, *in personam*, be entered for any deficiency resulting after the judicial sale of the VESSEL;

6.     That it be decreed that any and all persons, firms, or corporations claiming any interest in the VESSEL are forever barred and foreclosed of and from all right or equity of redemption or claim of, in, or to the mortgaged VESSEL and every part thereof;

7.     Adjudging that all rights, claims, ownership, liens, titles, and demands of SITKO are subsequent to and subject to the lien of the Deed of Trust;

8.     Adjudging that the Deed of Trust be foreclosed, that the Real Property be sold according to law, that the proceeds of the sale be applied in payment of the amounts due to BANK OF AMERICA, that SITKO and all persons claiming under SITKO, after execution of the Deed of Trust, whether as lien claimant, judgment creditor, claimant under a junior trust deed, purchaser, lienholder, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the Real Property and every part of the Real

13

Property when time for redemption has elapsed;

9.     Adjudging that SITKO is liable for payment of the obligation secured by the Deed of Trust, and that a deficiency judgment may be ordered following proceedings prescribed by law;

10.    Permitting BANK OF AMERICA to become a purchaser at the foreclosure sale of the Real Property;

11.    Directing the levying officer, after the time for redemption has elapsed, to execute a deed to the purchaser of the Real Property at the sale, and directing that the purchaser be let into possession of the Real Property on production of the levying officer's deed;

12.    That the Court provide such other and further relief in BANK OF AMERICA's favor as the Court deems just and proper.

WRIGHT & L'ESTRANGE
Attorneys for Plaintiff-in-
Intervention Bank of America, N.A.

Dated: March 29, 2011

Alexander T Gruft, Esq.

1

## **VERIFICATION**

2      I, Thomas Danehey, declare under penalty of perjury under the laws of the

3  United States and the State of North Carolina as follows:

4      I am the Senior Vice-President of BUSINESS LOAN CENTER, LLC

5  ("BLC").  BLC is the originator of the loan to defendant borrowers herein and is

6  authorized to act on behalf of Plaintiff-In-Intervention Bank of America, N.A., in

7  its capacity as servicer of that loan and has the power to do so under that certain

8  Sale and Servicing Agreement dated January 1, 2006.  I am authorized to make

9  this verification for and on behalf of BLC, and I make this verification for that

10 reason.  I have read the [Proposed] Verified Complaint In Intervention In Rem

11 And In Personam To Foreclose First Preferred Ship's Mortgage And For

12 Deficiency Judgment.  It is true based on my own knowledge.

13      Executed this ____28____ date of March, 2011, at Charlotte, North

14 Carolina.

15

16                                                Thomas Danehey

17

18        Notary Public
         Mecklenburg County
19       My Commission Expires
         02/17/2015

20

21

22

23

24

25

26

27

28

15

EXHIBIT A

CCAN: 2005042 0B



## U.S. Small Business Administration

# NOTE

| SBA Loan # | PLP 87840040-10 |
|---|---|
| SBA Loan Name | Endeavor Charters, Inc |
| Date | April 2 0 , 2005 |
| Loan Amount | $1,765,000.00 |
| Interest Rate | Prime plus 2.75% |
| Borrower | Endeavor Charters, Inc. |
| Operating Company | N/A |
| Lender | Business Loan Center, LLC |

1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of
One Million Seven Hundred Sixty-five Thousand and 00/100 Dollars ($1,765,000.00), interest on the unpaid
principal balance, and all other amounts required by this Note.

2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who
pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.



3   PAYMENT TERMS:

Borrower must make all payments at the place Lender designates  The payment terms for this Note are:

---

**NOTE TERMS:**

**Maturity:**  This Note will mature in 20 years from date of Note.

Repayment Terms: The interest rate on this Note will fluctuate.  The initial interest rate is 8.50% per year.  This initial rate is the prime rate on the date SBA received the loan application, plus 2.75%.  The initial interest rate must remain in effect until the first change period begins.

Borrower must pay one payment of interest only on the disbursed principal balance one month from the month this Note is dated; payment must be made on the first calendar day in the month it is due.

Borrower must pay principal and interest payments of $15,317.08 every month, beginning two months from the month this Note is dated; payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal

The interest rate will be adjusted every calendar quarter (the "change period")

The "Prime Rate" is the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the Wall Street Journal on the next business day.

The adjusted interest rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period.  The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default.  If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

All remaining principal and accrued interest is due and payable 20 years from date of Note.

**Late Charge:**  If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5% of the unpaid portion of the regularly scheduled payment.

---

4.  RIGHT TO PREPAY:

Notwithstanding any provision in this Note to the contrary:

**Borrower may prepay this Note.**  Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice.  If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

A.   Give Lender written notice;

B    Pay all accrued interest; and

C.   If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph B, above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

**Additional payment charges apply.**  When in any one of the first three years from the date of initial disbursement Borrower voluntarily prepays more than 25% of the outstanding principal balance of the loan, Borrower must pay to Lender on behalf of SBA a prepayment fee for that year as follows:

A   During the first year after the date on which the loan is first disbursed, 5% of the total prepayment amount;

B.   During the second year after the date on which the loan is first disbursed, 3% of the total prepayment amount;

C.   During the third year after the date on which the loan is first disbursed, 1% of the total prepayment amount.

5.   DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.   Fails to do anything required by this Note and other Loan Documents;

B.   Defaults on any other loan with Lender;

C.   Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D.   Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E.   Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.   Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G.   Fails to pay any taxes when due;

H.   Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.   Has a receiver or liquidator appointed for any part of their business or property;

J.   Makes an assignment for the benefit of creditors;

K.   Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L.   Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent;  or

M.   Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay  this Note.

6.   LENDER'S RIGHTS IF THERE  IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.   Require immediate payment of all amounts owing under this Note;

B.   Collect all amounts owing from any Borrower or Guarantor;

C.   File suit and obtain judgment;

D.   Take possession of any Collateral; or

E.   Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

7.   LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.   Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B.   Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and  preserve or dispose of the Collateral.  Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs.  If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C.   Release anyone obligated to pay this Note;

D.   Compromise, release, renew, extend or substitute any of the Collateral; and

SBA Form 147 (10/22/98)  Previous editions obsolete.                                    Page 3 / 6

E.   Take any action necessary ... protect the Collateral or collect amounts owing ... this Note.

8.   WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

9.   SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

10   GENERAL PROVISIONS:

A.   All individuals and entities signing this Note are jointly and severally liable.

B.   Borrower waives all suretyship defenses.

C.   Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D.   Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E.   Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F.   If any part of this Note is unenforceable, all other parts remain in effect.

G   To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.



11. STATE-SPECIFIC PROVISIONS:

**BORROWER ACKNOWLEDGES THIS NOTE IS SECURED BY A DEED OF TRUST IN FAVOR OF LENDER ON REAL PROPERTY LOCATED IN LOS ANGELES, COUNTY, STATE OF CALIFORNIA. THAT DEED OF TRUST CONTAINS THE FOLLOWING DUE-ON-SALE PROVISION:**

..."That the transfer or further encumbrance of the Subject Property, or a change in the person or entity operating or managing the Subject Property could significantly and materially alter, impair and reduce Beneficiary's security for the Note is likewise acknowledged by Trustor and Beneficiary. In order, therefore, to induce Beneficiary to accept the Note, Trustor agrees not to transfer or further encumber the Subject Property, or any portion thereof, or any interest therein, without the prior written consent of Beneficiary. In the event Trustor, or any successor in interest of Trustor, shall transfer or further encumber the Subject Property or any portion thereof, or any interest therein, without first obtaining the written consent of Beneficiary or the reconveyance of the Subject Property from the lien of this Deed of Trust, all indebtedness secured by this Deed of Trust, including without limitation the unpaid principal balance due on the Note, irrespective of the maturity date of the Note, shall, at the option of Beneficiary and without notice or demand, become immediately due and payable. As used herein, "transfer" includes the sale, option to sell, transfer or conveyance of the Subject Property, or any portion thereof, or any interest therein, or the transfer of any general partnership interests, membership interests or shares of stock (as applicable) in Trustor, whether voluntary, involuntary (except by eminent domain or upon death or mental incapacity), by operation of law or otherwise, or the lease of all or substantially all of the Subject Property".



12.   BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

**BORROWER:**

Endeavor Charters, Inc.

By: _____
        Stuart Sitko, President

Attest: _____
        Stuart Sitko, Secretary

EXHIBIT B

Document Type: MORTGAGE
Batch Number: 3704??
Document ID: ???
Use/LOC SCANNERS
Filed Date: 11 MAY 2005 10:57 AM

# S MORTGAGE
## ON, INC.

### 416 S.E. 15th STREET, FT. LAUDERDALE, FL 33316-1952

FIRST PREFERRED SHIP'S MORTGAGE dated APRIL 20, 2005          Under 46 U.S.C. Sec. 31301, et seq., as amended Securing A promissory
(the "Note") dated APRIL 20, 2005

This is a Preferred Ship Mortgage (the "Mortgage") on the vessel "ENDEAVOR" (the "Boat") which is being created under Federal Law. The amount of
the Mortgage as required to be shown by Chapter 313, Title 46 U.S. Code, is the Loan Amount (i.e. Financed) of $ 1,765,000.00   This Mortgage also secures
repayment of simple interest as it accrued or precomputed interest to appropriate prepayment credit and performance of Mortgage representations, warranties and
promises.

**1. PARTIES:**
Mortgagor(s)

670 LIDO PARK DRIVE
NEWPORT BEACH, CA   92661
100%   Sole Owner

The (sole owner(s)) of the Boat.
Mortgagee

BUSINESS LOAN CENTER, LLC
645 MADISON AVE. NEW YORK
NY, 10022
100%

The words I, me, mine, we and our mean everyone (individuals, partners or corporations) who sign this Mortgage as Mortgagor and, where applicable, any Other Owner,
and the personal representatives, successors and assigns of Mortgagor and any other Owner. The words you and your mean the Mortgagee and anyone who has
Mortgagee's rights under this Mortgage. If this Mortgage is given by a corporation, the words it and it's may also mean corporation.

**2. DESCRIPTION OF BOAT:** The Boat covered by this Mortgage is described below and is not a towboat, barge, scow, lighter, car float, canalboat or tank vessel of
less than 25 gross tons, as such words are used in 46 U.S.C. Sec. 922.

NAME: ENDEAVOR          TO BE RENAMED) ENDEAVOR          OFFICIAL NUMBER: 582496

HOME PORT: NYDC          HULL NUMBER:

**3. MULTIPLE MORTGAGORS:** Each person who signs this Mortgage as Mortgagor will be responsible for the full amount of the Debt and everything required of
Mortgagor, unless specifically stated otherwise below. You may sue one Mortgagor without joining or notifying any co-Mortgagor. You do not have to Notify one
Mortgagor that another has defaulted under this Mortgage. You may give one Mortgagor extensions to pay or change or release his responsibility without releasing any
co-Mortgagor in the same way. Each person who signs the Mortgage as an Other Owner makes all of the title warranties but none of the other promises.

**4. MORTGAGE DEBT:** This Mortgage secures my obligation ("the Debt") now due or which may become due in the future to you under this Mortgage and under the
Note which is now held by you, given by me as borrower to BUSINESS LOAN CENTER, LLC.          as further to be secured by this Mortgage on the Boat described above,

**5. PROMISE TO PAY:** I will pay and perform the Debt.

**6. GOVERNING LAW:** The parties have chosen federal law, including but not limited to 46 U.S.C. Section 30101, 31301 and the sections following in 46 U.S.
Section 31321, et seq., as amended, to cover all of the provisions of this Mortgage. In particular, 46 U.S.C. Section 31322 (b) covers the internal provisions of the
Note and this Mortgage. If there are gaps in Federal law as to non-interest provisions, and only to such extent, the law of the State of CALIFORNIA shall govern this
transaction.

**7. MORTGAGE:** To secure the Debt, I mortgage to you the whole of the Boat named above and further describe in her last marine document identified above, together
with all masts, boilers, holders, cables, engines, machinery, tanks, rigging, auxiliary boats, anchors chains, blocks, apparel, bowsprits, furniture, fittings, tools, pumps,
solar and other electronic or other equipment and supplies, and all fishing and other attachments and accessories, now part of the Boat or used in or on the Boat or
which may become part of the Boat in the future, whether or not removed from the Boat (all called the "Boat"). If I am not a corporation and the Boat was purchased
primarily for my own non-business use, the lien of this Mortgage shall not cover any liens added to the

sport Mortgage



# FIRST PREFERRED SHIP'S MORTGAGE

## SAXTON DOCUMENTATION, INC.

### 416 S.E. 15th STREET, FT. LAUDERDALE, FL 33316-1952

FIRST PREFERRED SHIP'S MORTGAGE dated APRIL 20, 2005 ,      Under 46 U.S.C. Sec 31301, et seq., as amended Securing A promissory
Note (the "Note") dated APRIL 20, 2005 .

This is a Preferred Ship Mortgage (the "Mortgage") on the vessel "ENDEAVOR        " (the "Boat") which is being created under Federal Law  The amount of
the Mortgage as required to be shown by Chapter 313, Title 46 U.S Code, is the Loan Amount (i.e. Financed) of $ 1,765,000.00    This Mortgage also secures
repayment of simple interest as it accrues or precomputed interest to appropriate prepayment credit and performance of Mortgage representations, warranties and
promises.

**1 PARTIES:**
Mortgagor(s)

      670 LIDO PARK DRIVE
      NEWPORT BEACH, CA   92663
      100% Sole Owner

The (sole owner(s)) of the Boat.
Mortgagee:

      BUSINESS LOAN CENTER, LLC
      645 MADISON AVE.  NEW YORK
      NY,  10022
      100%

The words I, me, Mine, we and our mean everyone (individuals, partners or corporation) who sign this Mortgage as Mortgagor and, where applicable, any Other Owner,
and the personal representatives, successors and assigns of Mortgagor and any other Owner.  The words you and your mean the Mortgagee and anyone who has
Mortgagee's rights under this Mortgage.  If this Mortgage is given by a corporation, the words it and it's may also mean corporation

**2. DESCRIPTION OF BOAT:**  The Boat covered by this Mortgage is described below and is not a towboat, barge, scow, lighter, car float, canalboat or tank vessel of
less than 25 gross tons, as such words as used in 46 U.S.C. Sec. 922.

NAME: ENDEAVOR                          TO BE RENAMED:  ENDEAVOR

HOME PORT:  NVDC                     HULL NUMBER:                         OFFICIAL NUMBER:  582496

**3. MULTIPLE MORTGAGORS:**  Each person who signs this Mortgage as Mortgagor will be responsible for the full amount of the Debt and everything required of
Mortgagor, unless specifically stated otherwise below.  You may sue one Mortgagor without joining or notifying any co-Mortgagor.  You do not have to Notify one
Mortgagor that another has defaulted under this Mortgage.  You may give one Mortgagor extensions to pay or change or release his responsibility without releasing any
co-Mortgagor in the same way.  Each person who signs this Mortgage as an Other Owner makes all of the title warranties but none of the other promises.

**4 MORTGAGE DEBT:**  This Mortgage secures my obligation ("the Debt") now due or which may become due in the future to you under this Mortgage and under the
Note which is now held by you, given by me as borrower to  BUSINESS LOAN CENTER, LLC      as lender to be secured by this Mortgage on the Boat described above.

**5. PROMISE TO PAY:**  I will pay and perform the Debt.

**6. GOVERNING LAW:**  The parties have chosen federal law, including but not limited to 46 U S C  Section 30101, 31301 and the sections following in 46 U.S.C
Section 31301, et seq., as amended, to cover all of the provisions of this Mortgage.  In particular,  46 U.S.C. Section 31322 (b) covers the interest provisions of the
Note and this Mortgage.  If there are gaps in Federal Law as to non-interest provisions, and only to such extent, the law of the State of CALIFORNIA  shall govern this
transaction.

**7. MORTGAGE:**  To secure the Debt, I mortgage to you the whole of the Boat named above and further describe in her last marine document identified above, together
with: all masts, towers, boilers, cables, engines, machinery, sails, rigging, auxiliary boats, anchors chains, tackle, apparel, bowsprits, furniture, fittings, tools, pumps,
radar and other electronic or other equipment and supplies, and all fishing and other attachments and accessories, now part of the Boat or used in or on the Boat or
which may become part of the Boat in the future, whether or not removed from the Boat (all called the "Boat").  If I am not a corporation and the Boat was purchased
primarily for my own non-business use, the lien of this Mortgage shall not cover any items added to the

Report Mortgage

